United States Court of Appeals
For the Eighth Circuit

_____

No. 14-2396
_____

United States of America

*Plaintiff - Appellee*

v.

Richard Mathis

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: December 9, 2014
Filed: May, 12, 2015

_____

Before LOKEN, BYE, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Richard Mathis was convicted for being a felon in possession of a firearm and received an enhanced sentence under the Armed Career Criminal Act (ACCA), which applies to felons guilty of possession of a firearm who have three prior violent felony

convictions. The district court[1] also imposed special conditions of supervised release usually reserved for convicted sex offenders. Mathis appeals his sentence and the special conditions of supervised release. We affirm.

## I. *Background*

On February 15, 2013, a 15-year-old boy named K.G. went missing. While missing, the boy stayed at Mathis's house. K.G. alleged that, during this time, Mathis forcibly molested him. On February 25, 2013, police officers tracked K.G.'s cell phone to Mathis's house. Mathis's girlfriend, who also stayed at the house, answered the door and told officers that Mathis was not home and that she did not know K.G.'s whereabouts. She later admitted that she lied to the officers; in fact, Mathis, K.G., and two other young males were present in the house. Later that night, Mathis took K.G. to his grandmother's house. On March 3, 2013, K.G. disclosed Mathis's alleged sexual abuse to officers.

The officers obtained several warrants to search Mathis's residence. On March 8, 2013, they executed the warrants and found a loaded rifle and ammunition. The officers also found a cell phone with nearly 6,000 text messages on it. Many of the messages were between Mathis and young males whom he had met on Meetme.com, the same social networking site through which K.G. had met Mathis. Several of the text messages were sexually explicit. These text messages showed that Mathis had traveled far to bring some of the young males whom he met on Meetme.com back to his residence. Additionally, a memory card was recovered during the search, which contained a picture of a nude underage male. Investigators also questioned Mathis's girlfriend. She admitted that she lied to officers on their February 25th visit. Mathis's girlfriend also stated that she believed that Mathis was having sexual intercourse with the boys whom he routinely brought to his house. One of the other victims, an 18-

_____

[1]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

year-old male, told the officers that Mathis asked him about masturbation, asked him about the size of his genitals, and made several sexually explicit comments.

Police arrested Mathis on March 8, 2013, at his place of employment. While in custody, Mathis admitted that he owned the rifle and ammunition. Mathis also freely admitted that the officers might find child pornography on his computer and that he had visited websites to view and visit with young-looking homosexual males.

Mathis was indicted for one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), to which he pleaded guilty on January 21, 2014, in accordance with a plea agreement.

At Mathis's sentencing hearing, the court first considered whether the ACCA (18 U.S.C. § 924(e)) applied to Mathis. If Mathis possessed three prior convictions for "violent felonies," the ACCA would impose a 15-year mandatory minimum sentence. *Id.* After extensive oral argument and consideration of the Supreme Court's and this court's precedent, the district court ultimately found that Mathis's five burglary convictions in Iowa were violent felonies and justified sentencing under the ACCA. The court found that the Iowa burglary statutes in question, Iowa Code §§ 713.1 and 713.5, were divisible under *Descamps v. United States*, 133 S. Ct. 2276 (2013). Under *Descamps*, the court believed it could use the modified categorical approach to determine the particular elements of the specific burglary provision under which Mathis was convicted. Additionally, the court found that the burglaries were violent felonies under the ACCA's residual clause because they were substantially similar to generic burglary and posed the same risk of harm to others. Finally, the court found Mathis's prior conviction in Iowa for interference with official acts inflicting serious injury was also a violent felony for ACCA purposes. As a result of the ACCA enhancement, Mathis was sentenced to the mandatory minimum of 180 months' imprisonment with five years of supervised release.

As part of the supervised release, the court imposed special release conditions routinely applied to sex offenders. The court heard testimony from two law enforcement officers that detailed Mathis's interest in young males. In addition to the information pertaining to the instant offense, the officers also disclosed a similar investigation in 1990. Then, two missing young boys, after their recovery, told police that they had been staying in Mathis's trailer. Considering this testimony, even though Mathis had never been convicted of a sex crime, the court found that the conditions of supervised release were appropriate to protect the public from Mathis.

## II. *Discussion*

Mathis argues on appeal that his prior convictions for second-degree burglary are not violent felonies under the ACCA. He also challenges the imposition of sex-offender-related special conditions of supervised release.

## A. *Application of the ACCA*

Mathis first argues that the district court erred by finding that the Iowa burglary statute was divisible and by applying the modified categorical approach to determine the nature of his convictions. This error, Mathis argues, led the district court to erroneously conclude that his five previous burglary convictions were violent felonies for ACCA purposes.[2]

We review de novo whether a prior state-court conviction constitutes a violent felony for ACCA purposes. *United States v. Pate*, 754 F.3d 550, 553–54 (8th Cir. 2014) (citation omitted). The ACCA enhances the sentences of those defendants found

---

[2]Mathis does not appeal the district court's finding that his previous Iowa conviction for interference with official acts inflicting serious injury constitutes one of the three predicate violent felonies required to apply the ACCA. Consequently, we consider this issue abandoned on appeal and will not disturb this finding. *See United States v. Batts*, 758 F.3d 915, 916 n.2 (8th Cir. 2014) (an argument raised before the district court but not raised on appeal is considered abandoned).

guilty of being a felon in possession of a firearm that have three previous convictions for "violent felon[ies]." 18 U.S.C. § 924(e)(1). As defined by the statute, a violent felony is one that "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is *burglary*, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." *Id.* § 924(e)(2)(B) (emphasis added). Accordingly, Mathis contends that none of his convictions for burglary in Iowa qualify as a "burglary" as contemplated in the ACCA.

In the typical case, we use the "categorical approach" to determine whether prior convictions amount to violent felonies. *See Descamps*, 133 S. Ct. at 2283. This approach requires courts to "look only to the fact of conviction and the statutory definition of the prior offense." *Taylor v. United States*, 495 U.S. 575, 602 (1990) (footnote omitted). Thus, in cases where prior convictions are for one of the named offenses in § 924(e)(2)(B)(ii), we look only at the elements of the offense as defined by the state statute to discern whether the nature of the state crime fits within the generic definition of the crime considered by the federal statute. For burglary, the Court has defined the generic crime as "having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Id.* at 599. Therefore, if the state statute is "narrower than the generic view," a conviction under such statute would qualify as a violent felony for ACCA purposes "because the conviction necessarily implies that the defendant has been found guilty of all the elements of generic burglary." *Id.*

There are a "narrow range of cases," however, in which state statutes present the necessary elements for conviction in the alternative. *See Descamps*, 133 S. Ct. at 2283–84. These alternatives, as presented in the statute, lay out one set of elements that would fit within the generic crime and another set of elements that would not. *See id.*, 133 S. Ct. at 2283–84; *see also United States v. Howard*, 742 F.3d 1334, 1343 (11th Cir. 2014). These divisible statutes can thus be divided into alternative elements,

which may in some cases constitute violent felonies, but other times may not. When approaching divisible statutes, courts are allowed to go one step further than the categorical approach to apply the "modified categorical approach." *Descamps*, 133 S. Ct. at 2283–84. This tool allows courts to examine certain documents (such as charging papers and jury instructions) to determine under which set of alternative elements the defendant was convicted. *Id.* at 2284–86. Courts can then use their findings to properly determine whether prior convictions are violent felonies. *Id.* at 2284.

In *Descamps*, the Court attempted to clarify divisibility, but as Justice Kennedy observed, this "dichotomy between divisible and indivisible state criminal statutes is not all that clear." *Id.* at 2293 (Kennedy, J., concurring). Applying *Taylor*, the Court proposed a hypothetical state burglary statute that otherwise conformed with generic burglary, but also swept more broadly by criminalizing the "'entry of an automobile as well as a building.'" *Id.* at 2284 (quoting *Taylor*, 495 U.S. at 602). The statute in *Taylor* was a divisible statute because it presented an alternative set of elements, one of which conformed with generic burglary—entry into a building—and one of which did not—entry into an automobile. When dealing with a divisible statute, courts can then use the modified categorical approach to glean from certain approved documents of which set of elements the defendant was prosecuted and found guilty.

The Court's hypothetical became reality in *Shepard v. United States*, 544 U.S. 13 (2005). *Shepard* dealt with the divisibility of a Massachusetts burglary statute that criminalized "entries into 'boats and cars' as well as buildings." *Descamps*, 133 S. Ct. at 2284 (citing *Shepard*, 544 U.S. at 17); *see also* Mass. Gen. Laws ch. 266, §§ 16, 18 (2000). "No one could know, just from looking at the statute, which version of the offense [the defendant] was convicted of" in his guilty plea. *Descamps*, 133 S. Ct. at 2284. Thus, the Court used the modified categorical approach. In doing so, the Court delineated the scope of the modified categorical approach: "It was not to determine 'what the defendant and state judge must have understood as the factual basis of the

prior plea,' but only to assess whether the plea was to the version of the crime in the Massachusetts statute (burglary of a building) corresponding to the generic offense." *Id.* (quoting *Shepard*, 544 U.S. at 25).

Our court has also encountered state burglary statutes like the hypothetical in *Taylor* and the convicting statute in *Shepard*. In *United States v. Bell*, we used the modified categorical approach to determine which set of alternative elements the defendant was convicted for in his prior conviction under the Missouri second-degree burglary statute. 445 F.3d 1086, 1090–91 (8th Cir. 2006). Under the Missouri statute, "a person commits second-degree burglary when he 'knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein.'" *Id.* at 1090 (quoting Mo. Rev. Stat. § 569.170). The term "inhabitable structure" was elsewhere defined in the statute to "include ships, airplanes, and vehicles." *Id.* (citing Mo. Rev. Stat. § 569.010(2)). Recognizing that this statute was precisely the kind that the Court considered in its hypothetical in *Taylor*, we relied upon portions of the defendant's presentence investigation report that were deemed admitted. *Id.* The report recorded that the defendant's prior conviction under the Missouri statute was for burgling a building. *Id.* Thus, we concluded that the defendant's "prior commercial burglary conviction was . . . a generic burglary under *Taylor* and therefore a crime of violence."[3] *Id.* at 1091. We see nothing from

---

[3]*Bell*'s decision was in the context of determining whether the defendant's prior second-degree burglary conviction was a "crime of violence" under U.S.S.G. § 2K2.1(a)(4)(A). The Guidelines make clear that the term "crime of violence" as used in § 2K2.1(a)(4)(A) "has the meaning given that term in §4B1.2(a)." *Id.* § 2K2.1 cmt. 1. Further, we have long held that the terms "'violent felony' and 'crime of violence' are virtually interchangeable in definition and interpretation." *United States v. Eason*, 643 F.3d 622, 624 n.2 (8th Cir. 2011) (citing *United States v. Williams*, 537 F.3d 969, 971 (8th Cir. 2008)). Thus, cases that analyze the term "crime of violence" in applying enhancements under §§ 2K2.1 and 4B1.1 of the Guidelines can be used to inform analysis of the term "violent felony" in ACCA cases, and vice versa. Consequently, *Bell*'s "crime of violence" determination is relevant to the current

subsequent Supreme Court opinions that overturn our application of the modified categorical approach in *Bell*.

*Shepard* and *Bell* control the instant appeal. Mathis was previously convicted five times in Iowa for second-degree burglary in violation of Iowa Code §§ 713.3 and 713.5.[4] In Iowa, burglary is defined as follows:

> Any person, having the intent to commit a felony, assault or theft therein, who, having no right, license or privilege to do so, enters an *occupied structure*, such occupied structure not being open to the public, or who remains therein after it is closed to the public or after the person's right, license or privilege to be there has expired, or any person having such intent who breaks an occupied structure, commits burglary.

Iowa Code § 713.1 (1989) (emphasis added). Second-degree burglary is a burglary "in or upon an *occupied structure*" in which no persons are present, the burglar "has possession of an explosive or incendiary device or material" or other dangerous weapon, "or a bodily injury results to any person." *Id.* § 713.5(1)(a) (emphasis added). Second-degree burglary can also be committed if a person is present when the burglary happens but the burglar does not have possession of any of the aforementioned items and there is no bodily injury to any person. *Id.* § 713.5(1)(b).[5]

_____

"violent felony" discussion.

[4]Mathis's first conviction was in 1980 for second-degree burglary, in violation of Iowa Code § 713.3; the other four convictions came in 1991, when the second-degree burglary statute was found in § 713.5. Both parties acknowledge the burglary statute was amended in 1984; for simplicity, the parties have agreed to argue on the language as contained in the 1989 version of the statute, under which Mathis was convicted for the second through fifth burglaries.

[5]Iowa's statutes provide multiple means of committing second-degree burglary, including (1) perpetrating the burglary when someone is present in the place being burgled, (2) perpetrating the burglary when possessing certain items, or (3) if a bodily

Thus, a conviction of burglary, at first glance, seems to fit within generic burglary of "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Taylor*, 495 U.S. at 599. The Iowa statute, however, sweeps more broadly than generic burglary because the term "occupied structure" is defined elsewhere in the statute as:

> [A]ny building, structure, appurtenances to buildings and structures, land, water or air vehicle, or similar place adapted for overnight accommodation of persons, or occupied by persons for the purpose of carrying on business or other activity therein, or for the storage or safekeeping of anything of value. Such a structure is an "occupied structure" whether or not a person is actually present.

Iowa Code § 702.12. Consequently, it is impossible to know from looking at the convicting statute which set of alternative elements Mathis was convicted of: a set of elements that conforms with generic burglary—entry into a "building" or "structure"—or a set of elements that does not—entry into a "land, water or air vehicle." The statute exhibits the exact type of divisibility contemplated in *Taylor* and later solved in *Shepard* and *Bell*. As in the latter mentioned cases, the modified categorical approach is the proper tool to determine whether Mathis's prior convictions are "violent felonies."

Mathis argues against this conclusion by asserting that the convicting statute and definition of "occupied structure" do not present alternative elements, but instead

---

injury to any person occurs during the commission of the burglary. These alternative elements, however, are irrelevant to divisibility because these alternatives have no bearing on the statute's conformity to the generic burglary definition. "General divisibility . . . is not enough; a statute is divisible for purposes of applying the modified categorical approach only if at least one of the categories into which the statute may be divided constitutes, *by its elements*, a crime of violence." *United States v. Cabrera-Umanzor*, 728 F.3d 347, 352 (4th Cir. 2013).

simply present different types of occupied structures that can be burgled. Therefore, "[t]he jurors need not all agree on whether" he burgled a building, a boat, or a car, "because the actual statute requires the jury to find only" that he burgled an occupied structure. *Descamps*, 133 S. Ct. at 2290. This argument amounts to the means/elements distinction that was explicitly rejected in *Descamps*. *Descamps* held that the Court's decisions in *Taylor*, *Shepard*, and *Johnson* "rested on the explicit premise that the laws 'contain[ed] statutory phrases that cover several different . . . crimes,' not several different methods of committing one offense." *Id.* at 2285 n.2 (alterations in original) (quoting *Johnson*, 559 U.S. at 144). The Court then instructed that

> [w]hatever a statute lists (*whether elements or means*), the documents we approved in *Taylor* and *Shepard* . . . would reflect the crime's elements. . . . When a state law is drafted in the alternative, the court merely resorts to the approved documents and compares the elements revealed there to those of the generic offense.

*Id.* (emphasis added). The Court's instruction clarifies the distinction between elements and means in analyzing potentially divisible statutes.[6] In the present case, the

---

[6]We recognize the elements/means distinction is a matter that splits our sister circuits. *Compare United States v. Royal*, 731 F.3d 333 (4th Cir. 2013) ("Rather than alternative *elements*, then, 'offensive physical contact' and 'physical harm' are merely alternative *means* of satisfying a single element of the Maryland offense."), *and Howard*, 742 F.3d at 1348–49 (finding that a disjunctive "or" statement that listed alternative places that could be burgled were "illustrative examples" and not "alternative elements"), *and Rendon v. Holder*, 764 F.3d 1077, 1086 (9th Cir. 2014) ("To be clear, it is black-letter law that a statute is divisible only if it contains multiple alternative elements, as opposed to multiple alternative means. Thus, when a court encounters a statute that is written in the disjunctive (that is, with an 'or'), that fact alone cannot end the divisibility inquiry." (citation omitted)), *with United States v. Prater*, 766 F.3d 501, 510 (6th Cir. 2014) (finding a New York statute divisible when it listed several alternative places that could be burgled in a disjunctive "or" statement).

term "occupied structure" reflects various places for unlawful entry that the statute criminalizes by providing a disjunctive list of buildings that can be burgled under the statute.[7] Whether these amount to alternative elements or merely alternative means to fulfilling an element, the statute is divisible, and we must apply the modified categorical approach.

Upon examining the charging documents that correspond with Mathis's burglary convictions, Mathis was charged with and convicted of entering garages in relation to two of his burglary convictions. Because a garage is clearly a "building," we find that Mathis was convicted under the element of the Iowa burglary statute that

_____

[7]We also acknowledge another split in our sister circuits that is relevant for this appeal: whether a court can consider a statute or subsection, outside of the convicting statute, that defines a term in the convicting statute. *Compare United States v. Hockenberry*, 730 F.3d 645, 669 (6th Cir. 2014) (consulting a different statute that defined the term "occupied structure" to determine the divisibility of a Pennsylvania burglary statute), *and United States v. Herrera-Alvarez*, 753 F.3d 132, 139–40 (5th Cir. 2014) (consulting a different statute that defined the term "dangerous weapon" to determine the divisibility of a Louisiana battery statute), *and United States v. Trent*, 767 F.3d 1046, 1056 (10th Cir. 2014) (consulting other statutes cross-referenced in a conspiracy statute to determine divisibility), *cert. denied*, No. 14-7762, 2015 WL 732162 (U.S. Feb. 23, 2015), *with United States v. Simmons*, — F.3d —, 2015 WL 1499310, at *4-5 (9th Cir. April 3, 2015) (declining to consult a separate statute that defined the term "custody" in a Hawaii escape statute).

Our case law allows such cross-referencing to definitions of defined terms outside the convicting statute. *See, e.g.*, *United States v. Martinez*, 756 F.3d 1092, 1095–96 (8th Cir. 2014) (finding that Ariz. Rev. Stat. § 13-3102(A) was divisible because of "the fourteen subsections of Ariz. Rev. Stat. § 13-3102(A) *and the numerous disjunctive definitions of the relevant terms* defined in Ariz. Rev. Stat. § 13-3101(A)." (emphasis added)); *Bell*, 445 F.3d at 1090 (consulting a separate section of the convicting statute for the definition of the term "inhabitable structure" in a divisibility determination).

conforms with generic burglary. When combining these two convictions with Mathis's conviction for interference with official acts inflicting serious injury, *see supra* n.2, we hold that Mathis has the requisite predicate "violent felonies" to be categorized as an armed career criminal under the ACCA.

B. *Sex-Offender-Related Special Conditions of Supervised Release*

Mathis next argues that the district court abused its discretion by imposing special conditions reserved for sex offenders because the conditions result in a greater deprivation of liberty than is reasonably necessary to fulfill the goals outlined in 18 U.S.C. § 3553(a).

"[T]his court reviews the terms and conditions of supervised release for abuse of discretion . . . ." *United States v. Schaefer*, 675 F.3d 1122, 1125 (8th Cir. 2012) (citation omitted). Generally, "[a] district court has broad discretion to impose special conditions of supervised release, so long as each condition complies with the requirements set forth in 18 U.S.C. § 3583(d)." *United States v. Morais*, 670 F.3d 889, 895 (8th Cir. 2012) (quotation and citation omitted). Such requirements mandate that special conditions are "reasonably related to the factors set forth in" § 3553(a), and that the conditions "involve[] no greater deprivation of liberty than is reasonably necessary for the purposes set forth in" the same section. 18 U.S.C. 3583(d)(1)–(2).

We have previously upheld special conditions of supervised release applied to sex offenders even when the underlying conviction was not for a sex offense. *See United States v. Kelly*, 625 F.3d 516, 519 (8th Cir. 2010) (upholding sex-offender-related special conditions of supervised release for conviction of being a felon in possession of a firearm); *United States v. Smart*, 472 F.3d 556, 559 (8th Cir. 2006) (same). Both *Kelly* and *Smart*, however, involved defendants that had previously been convicted of sex crimes. The question is, then, if Mathis's previous conduct justifies the imposition of the special conditions.

The district court heard extensive testimony from two law enforcement officers concerning allegations of sexual abuse made by K.G.—which happened contemporaneously with the charged offense—and allegations of sexual abuse made by two male children in 1990. In addition, the presentence investigation report (PSR) detailed instances where Mathis was found to have violated his parole for previous offenses on two different occasions regarding inappropriate behavior with young males. First, Mathis was arrested for conducting lascivious acts with a child in 1986; several individuals alleged Mathis exhibited inappropriate behavior towards their young male children in connection with this arrest. Second, Mathis's parole was revoked in 1989 when allegations surfaced that he performed fellatio on an 11-year-old boy. Mathis did not contest these portions of the PSR, allowing the district court to "accept [the] undisputed portion[s] . . . as a finding of fact." *United States v. Lee*, 570 F.3d 979, 982 (8th Cir. 2009) (quotation and citation omitted). Further, sentencing courts are allowed to make "findings . . . based on any information other than materially false information." *Schaefer*, 675 F.3d at 1124.

Based on the wealth of evidence presented of Mathis's improper acts toward young males, we find no abuse of discretion in the district court's finding that sex-offender-related special conditions were appropriate to deter Mathis, to protect the public from Mathis, and to provide Mathis with correctional treatment. *See* 18 U.S.C. § 3553(a)(2)(B)–(D).

### III. *Conclusion*

For the reasons stated, we affirm Mathis's sentence under the ACCA and the district court's imposition of sex-offender-related special conditions of supervised release.

_____