RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0262p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

    *Plaintiff-Appellee,*

 *v.*

CHRISTOPHER TODD RITCHEY,

    *Defendant-Appellant.*

No. 15-2460

---

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:15-cr-00061—Robert J. Jonker, District Judge.

Argued: July 26, 2016

Decided and Filed: October 26, 2016

Before: SILER, GIBBONS, and KETHLEDGE, Circuit Judges.

---

## COUNSEL

**ARGUED:** Paul L. Nelson, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Grand Rapids, Michigan, for Appellant. Justin M. Presant, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Paul L. Nelson, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Grand Rapids, Michigan, for Appellant. Justin M. Presant, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

---

## OPINION

---

 SILER, Circuit Judge. Christopher Ritchey appeals his sentence of fifteen years in prison pursuant to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), based on several prior convictions of a Michigan breaking and entering statute, Mich. Comp. Laws § 750.110.

1

This appeal requires us to address the Supreme Court's recent decision in *Mathis v. United States*, 136 S. Ct. 2243 (2016). Specifically, we must determine whether, in light of *Mathis*, a conviction under § 750.110 can qualify as a predicate "violent felony" under ACCA. Because the statute's terms are broader than generic burglary, and it is not divisible under *Mathis*, we **VACATE** Ritchey's sentence and **REMAND** for resentencing without an ACCA enhancement.

I.

While he was on parole under the supervision of the Michigan Department of Corrections in 2015, a complaint was filed against Ritchey, alleging that he threatened to kill another individual. A parole officer visited Ritchey's home and found a handgun therein.

Ritchey was indicted for being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e), and for possessing a stolen firearm, in violation of 18 U.S.C. § 922(j). He pleaded guilty to being a felon in possession of a firearm in exchange for the Government's dismissal of the stolen firearm charge.

The presentence report ("PSR") identified at least six prior convictions Ritchey had for breaking and entering a building with the intent to commit a felony or larceny therein, a felony under Michigan law. *See* Mich. Comp. Laws § 750.110. According to the PSR, each of these convictions qualified as a "violent felony" under ACCA.

The PSR calculated Ritchey's base offense level at 14 under USSG § 2K2.1(a)(6)(A). After a 2-level stolen-firearm enhancement under § 2K2.1(b)(4)(A), Ritchey's adjusted offense level was 16. Because the PSR identified Ritchey as an armed career criminal under ACCA, however, it substituted 33 for the adjusted offense level pursuant to § 4B1.4. Applying a three-level reduction for acceptance of responsibility, the PSR calculated Ritchey's total offense level as 30. The PSR also assigned Ritchey a subtotal criminal history score of 17 based on his prior convictions and applied a 2-point adjustment under § 4A1.1(d) because Ritchey committed the offense of conviction while under a criminal justice sentence. Accordingly, Ritchey's total criminal history score was 19, placing him in Criminal History Category VI. Applying the ACCA-specific provisions of § 4B1.4(c), Ritchey still fell within Criminal History Category VI.

Based on an offense level of 33 and Criminal History Category VI, Ritchey's Guidelines sentencing range was 168 to 210 months of imprisonment. ACCA, however, contains a mandatory minimum sentence of 15 years, so the Guidelines range became 180 to 210 months under § 5G1.1(c)(2).

Ritchey objected to the application of ACCA. According to him, the prior breaking and entering convictions did not qualify as "violent felonies" because § 750.110 does not fit the definition of a "generic burglary" under *Shepard v. United States*, 544 U.S. 13 (2005), and *Taylor v. United States*, 495 U.S. 575 (1990). The United States argued that, while § 750.110 is broader than a "generic burglary," the statute is divisible. Therefore, according to the Government, the sentencing court should use *Shepard* documents to determine whether Ritchey committed a generic burglary under the modified categorical approach. The Government provided felony informations for Ritchey's prior § 750.110 offenses to demonstrate that he "broke into and entered a building or structure: a barn, a garage, or a store."

The district court found that "the Michigan statute arguably includes some things that would qualify as generic burglary and arguably some things that don't," such as breaking and entering a tent. Applying the modified categorical approach, the court concluded that

> from the documents that the [G]overnment has attached to its brief, there are definitely at least three, probably more than three, as many as six separate breaking and enterings . . . of a building with intent. And the building is described specifically in one case as a store and in a number of other cases as a garage of one form or another. All of which . . . would qualify as a structure, as a building within the Supreme Court's generic definition of a burglary.

Ultimately, the court sentenced Ritchey to the mandatory minimum under ACCA: fifteen years or 180 months.

## II.

At the outset, Ritchey and the Government disagree on the appropriate standard of review. Ritchey maintains that de novo review should apply to the district court's determination that his § 750.110 offenses qualified as ACCA predicates. *See United States v. Mitchell*, 743 F.3d 1054, 1058 (6th Cir.), *cert. denied*, 135 S. Ct. 158 (2014). The United States, on the other

hand, suggests that the district court's application of ACCA should be reviewed for plain error because "Ritchey has waived the issue of the sufficiency of the Government's proofs regarding his prior convictions." We need not resolve this dispute because reversal is warranted even under plain-error review.

To satisfy plain-error review, there must be "(1) error that (2) was plain, (3) affected [the defendant's] substantial rights, and (4) seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Church*, 823 F.3d 351, 362 (6th Cir. 2016) (quoting *United States v. Ushery*, 785 F.3d 210, 218 (6th Cir. 2015)). Whether an error was "plain" is determined based on the state of the law "at the time of appellate consideration" rather than at the time of the district court's decision. *Henderson v. United States*, 133 S. Ct. 1121, 1130 (2013) (quoting *Johnson v. United States*, 520 U.S. 461, 468 (1997)); *see also United States v. Henry*, 797 F.3d 371, 375 (6th Cir. 2015).

## III.

Under ACCA, a defendant who violates 18 U.S.C. § 922(g) is subject to a fifteen-year mandatory minimum sentence if he "has three previous convictions by any court" for "a crime punishable by imprisonment for a term exceeding one year" and those convictions constituted "violent felon[ies] or . . . serious drug offense[s], or both, committed on occasions different from one another." 18 U.S.C. §§ 924(e)(1), 922(g)(1). ACCA defines a "violent felony" as

> any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—
>
> > (i)  has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> >
> > (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B).  At issue in this case is whether Ritchey's prior convictions for violating § 750.110 constitute "burglar[ies]" such that they qualify as predicate convictions for ACCA purposes.  *See* 18 U.S.C. § 924(e)(2)(B).

### A.

Whether a crime constitutes a "burglary" does not solely "depend on the definition adopted by the State of conviction."  *Taylor v. United States*, 495 U.S. 575, 590 (1990).  Nor, however, are predicate offenses limited to those falling within the common-law definition of "burglary"—"a breaking and entering of a dwelling at night, with intent to commit a felony." *Id.* at 592–94.  Rather, the Supreme Court adopted "the generic, contemporary meaning of burglary," which includes "the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime."  *Id.* at 598 (citing Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 8.13(a), (c), (e) (1986)).

The Court indicated that a statute that encompasses vehicles, vending machines, tents, boats, railroad cars, or other places that are not "buildings," criminalizes conduct broader than the generic meaning of burglary.  *Id.* at 599.  In relevant part, § 750.110 states that

> [a] person who breaks and enters, with intent to commit a felony or a larceny therein, a tent, hotel, office, store, shop, warehouse, barn, granary, factory or other building, structure, boat, ship, shipping container, or railroad car is guilty of a felony punishable by imprisonment for not more than 10 years.

Mich. Comp. Laws § 750.110(1).  The parties agree that this statute encompasses conduct beyond generic burglary.[1]

But the fact that a statute is broader than generic burglary is not the end of the inquiry. The Court has adopted a modified categorical approach in determining whether a prior conviction qualified as a burglary under ACCA, "generally requir[ing] the trial court to look only to the fact of conviction and the statutory definition of the prior offense."  *Id.* at 602; *see also*

---

[1]Three of Ritchey's § 750.110 convictions occurred before 2008 and thus were governed by a prior version of the statute.  The only change the Michigan legislature made to § 750.110 in 2008 was to include shipping containers within the statute's purview.  *See* 2008 Mich. Pub. Acts 10.  Because the pre-2008 version of the statute included, among other things, tents, boats, and railroad cars, it also encompassed conduct broader than generic burglary.  *See Taylor*, 495 U.S. at 590.

*Descamps v. United States*, 133 S. Ct. 2276, 2283–84 (2013). Sentencing courts are permitted "to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all of the elements of generic burglary." *Taylor*, 495 U.S. at 602. Thus, when a statute encompasses circumstances broader than generic burglary, the district court may look to "the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable record of this information"—commonly referred to as *Shepard* documents—to determine whether the defendant "necessarily admitted elements of the generic offense." *Shepard v. United States*, 544 U.S. 13, 26 (2005); *see also Taylor*, 495 U.S. at 602. However, this approach only applies "when a defendant was convicted of violating a divisible statute," i.e., "a statute [that] lists multiple, alternative elements, and so effectively creates 'several different . . . crimes,'" at least one of which is a generic burglary. *Descamps*, 133 S. Ct. at 2285 (quoting *Nijhawan v. Holder*, 557 U.S. 29, 41 (2009)).

Applying these principles, this court has determined that convictions under a prior, similar version of § 750.110 qualified as "burglary" for ACCA purposes. *United States v. Fish*, 928 F.2d 185, 188 (6th Cir. 1991). This court has also found that while the current version of § 750.110 is broader than generic burglary, sentencing courts may apply the modified-categorical approach and look to *Shepard* documents to determine whether the defendant committed a generic burglary. *United States v. Sanders*, 635 F. App'x 286, 289 (6th Cir. 2016). Generally, a prior published decision binds a later panel of this court unless it is overturned by the Supreme Court or overruled en banc, but departure is also warranted if "an inconsistent [ruling] of the United States Supreme Court requires modification of the decision." *Susan B. Anthony List v. Driehaus*, 814 F.3d 466, 471 (6th Cir. 2016) (quoting *Rutherford v. Columbia Gas*, 575 F.3d 616, 619 (6th Cir. 2009)). *Sanders* is not a published decision, but even if it were, it has been vacated for reconsideration in light of *Mathis v. United States*, 136 S. Ct. 2243 (2016). *Sanders v. United States*, 136 S. Ct. 2542, 2542–43 (2016) (mem.). Likewise, *Fish* has been abrogated to the extent its analysis is at odds with *Mathis*.

B.

In *Mathis*, the Supreme Court granted certiorari to consider "whether ACCA's general rule—that a defendant's crime of conviction can count as a predicate only if its elements match those of a generic offense—gives way when a statute happens to list various means by which a defendant can satisfy an element." 136 S. Ct. at 2251. At issue was Iowa's burglary statute, which makes it criminal for a person to make an unlawful or unprivileged entry into "any building, structure, appurtenances to buildings and structures, land, water or air vehicle, or similar place" with the intent to commit a felony, assault, or theft. Iowa Code §§ 702.12, 713.1. The Eighth Circuit found that sentencing courts may look to *Shepard* documents to determine whether a defendant was previously convicted of a generic burglary when the underlying statute includes "a disjunctive list" of places that it is criminal to break and enter. *United States v. Mathis*, 786 F.3d 1068, 1075 (8th Cir. 2015). Examining the charging documents, the court determined that the defendant's Iowa burglary conviction qualified as an ACCA predicate. *Id.* The Sixth Circuit later adopted the same principle. *United States v. Ozier*, 796 F.3d 597, 603 (6th Cir. 2015) (quoting *Mathis*, 786 F.3d at 1075).

The Supreme Court disagreed with this analysis, reversed the Eighth Circuit, and specifically abrogated this court's decision in *Ozier*. *Mathis*, 136 S. Ct. at 2251 & n.1. It noted that the Iowa Supreme Court has interpreted the state's burglary statute to list alternative methods of committing a single crime. *Id.* at 2250 (citing *State v. Rooney*, 862 N.W.2d 367, 376 (Iowa 2015); *State v. Duncan*, 312 N.W.2d 519, 523 (Iowa 1981)). But "a state crime cannot qualify as an ACCA predicate if its elements are broader than those of a listed generic offense." *Id.* at 2251 (citing *Taylor*, 495 U.S. at 602). Therefore, the Court held a conviction under the statute cannot serve as an ACCA predicate because the elements of Iowa's burglary statute "cover a greater swath of conduct than the elements" of generic burglary. *Id.*

In reaching this conclusion, the Court noted that, under generally established principles, "the 'underlying brute facts or means' of commission" are irrelevant for purposes of ACCA. *Id.* "[E]ven if his conduct fits within the generic offense, the mismatch of elements saves the defendant from an ACCA sentence." *Id.* Thus, the Court clarified that sentencing courts should engage in "an elements-only inquiry"; "[a]ll that counts under [ACCA] . . . are 'the elements of

the statute of conviction.'" *Id.* at 2251–52 (quoting *Taylor*, 495 U.S. at 601).  This is true even if the "sentencing judge knows (or can easily discover) that the defendant carried out a 'real' burglary." *Id.* at 2251.

The Court gave three basic justifications for limiting the ACCA inquiry to elements, rather than treating as divisible a non-generic burglary statute that lists alternative means for satisfying a particular element.  First, it determined that ACCA's text favors this result. *Id.* at 2252.  Second, "a construction of ACCA allowing a sentencing judge to go any further would raise serious Sixth Amendment concerns" because "only a jury, and not a judge, may find facts that increase a maximum penalty, except for the simple fact of a prior conviction." *Id.* (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).  And third, "an elements-focus avoids unfairness to defendants," given that "[s]tatements of 'non-elemental fact' in the records of prior convictions are prone to error precisely because their proof is unnecessary." *Id.* at 2253 (citing *Descamps*, 133 S. Ct. at 2288–89).  Because such facts are immaterial to the conviction, defendants have no incentive to contest them during the state court proceedings and indeed may be barred from doing so.  *See id.*  Accordingly, the Eighth Circuit "erred in applying the modified categorical approach to determine the means by which Mathis committed his prior crimes." *Id.*

In addition, the Court laid out a procedure for sentencing courts to follow in determining whether a conviction under a state burglary statute qualifies as a predicate offense under ACCA. When presented with a conviction under "an alternatively phrased statute," the sentencing court must first "determine whether its listed items are elements or means." *Id.* at 2256.  If the items are elements, the court must then "review the record materials to discover which of the enumerated alternatives played a part in the defendant's prior conviction, and then compare that element (along with all others) to those of the generic crime." *Id.*  If, on the other hand, they are means rather than elements, the ACCA inquiry is over—"the court has no call to decide which of the statutory alternatives was at issue in the earlier prosecution." *Id.*

In determining whether statutory alternatives constitute elements or means, the Court clarified that sentencing courts should look first to state law, including judicial interpretations of the criminal statute by state courts.  *See id.*  Alternatively, the statute itself may provide the

answer. A statute might explicitly "identify which things must be charged (and so are elements) and which need not be (and so are means)." *Id.* Moreover, "[i]f statutory alternatives carry different punishments, then under *Apprendi* they must be elements." *Id.* On the other hand, "if a statutory list is drafted to offer 'illustrative examples,' then it includes only a crime's means of commission." *Id.* (citing *United States v. Howard*, 742 F.3d 1334, 1348 (11th Cir. 2014); *United States v. Cabrera-Umanzor*, 728 F.3d 347, 353 (4th Cir. 2013)).

State law can be expected to provide a clear answer to the elements–means dilemma in many cases, but, if it does not, a sentencing court may briefly look to the record of the prior conviction. *See id.* at 2256–57. Sentencing courts encountering this situation may take a "'peek at the [record] documents' . . . for 'the sole and limited purpose of determining whether [the listed items are] element[s] of the offense.'" *Id.* (first, third, and fourth alterations in original) (quoting *Rendon v. Holder*, 782 F.3d 466, 473–474 (9th Cir. 2015) (Kozinski, J., dissenting from denial of reh'g en banc)). "[I]ndictments, jury instructions, plea colloquies and plea agreements will often 'reflect the crime's elements' and so can reveal . . . whether a statutory list is of elements or means." *Id.* at 2257 n.7 (quoting *Descamps*, 133 S. Ct. at 2285 n.2). If the charging documents "reiterat[e] all the terms of [the] law," then "each alternative is only a possible means of commission, not an element that the prosecutor must prove to a jury beyond a reasonable doubt." *Id.* at 2257. The same is true "if those documents use a single umbrella term like 'premises.'" *Id.* On the other hand, the record could indicate that the statute contains a list of distinct elements "by referencing one alternative term to the exclusion of all others." *Id.* Only if the record indicates that the listed items are elements, not alternative means, may the sentencing courts examine the *Shepard* documents to determine whether the crime the defendant was convicted of constituted a generic burglary. *See id.* The Court cautioned, however, that "such record materials will not in every case speak plainly, and if they do not, a sentencing judge will not be able to satisfy '*Taylor*'s demand for certainty' when determining whether a defendant was convicted of a generic offense." *Id.* (quoting *Shepard*, 544 U.S. at 21).

## C.

As previously mentioned, we recently determined that a conviction under § 750.110 could serve as an ACCA predicate, *Sanders*, 635 F. App'x at 288–89, but the Supreme Court

summarily vacated the decision and remanded for reconsideration in light of *Mathis*, *Sanders*, 136 S. Ct. at 2542–43.  While not dispositive, this suggests that the various places listed in § 750.110 may be alternative means of committing a single breaking-and-entering offense rather than separate elements of distinct crimes.  Following *Mathis*'s framework does not counsel a different result.  As discussed above, the parties agree that § 750.110—which criminalizes breaking and entering into "a tent, hotel, office, store, shop, warehouse, barn, granary, factory or other building, structure, boat, ship, shipping container, or railroad car"—is broader than a generic burglary statute.  Thus, the only remaining question is whether this list constitutes a set of elements or a description of different means of committing a crime.

We turn first to state law, as directed by *Mathis*.  Candidly, the United States admits that the Michigan Court of Appeals has labeled the statutory alternatives in § 750.110 as "examples," *People v. Walters*, 456, 465 N.W.2d 29, 31 (Mich. Ct. App. 1990) (per curiam), which cuts against finding that they are, in fact, elements.  In defining the elements of breaking and entering, Michigan courts have also treated violations of § 750.110 as a single crime regardless of the particular place broken into.  *See People v. Cornell*, 646 N.W.2d 127, 141 (Mich. 2002) ("The elements of breaking and entering with intent to commit larceny are:  (1) the defendant broke into a building, (2) the defendant entered the building, and (3) at the time of the breaking and entering, the defendant intended to commit a larceny therein."); *People v. Toole*, 576 N.W.2d 441, 443 (Mich. Ct. App. 1998) (same); *People v. Adams*, 509 N.W.2d 530, 532 (Mich. Ct. App. 1993) ("Breaking and entering requires a showing that (1) the defendant broke into a building, (2) the defendant entered the building, and (3) at the time of the breaking and entering, the defendant intended to commit a larceny or felony therein.").[2]

The Government maintains that, to the contrary, Michigan courts' use of the word "building" shows that the elements of the offense "include the place broken into."  While this argument has some appeal, it does not hold up to close scrutiny.  "Building" is used in this context as a generic term encompassing all the places identified in § 750.110.  As illustration, the

---

[2]One permissible interpretation of these cases is that § 750.110 defines two separate crimes:  breaking and entering with intent to commit larceny and breaking and entering with intent to commit a felony.  Even accepting this as true, though, this distinction does not concern the places listed in the statute—some of which fall outside the generic definition of burglary.  Therefore, this wrinkle in Michigan law is immaterial.

Michigan Court of Appeals has repeatedly used the word "building" in listing § 750.110's elements when the facts made clear that the defendant had broken and entered a particular place listed in the statute, such as a barn, office, store, shop, or warehouse. *See, e.g.*, *People v. Baker*, No. 301705, 2012 WL 639336, at *1 (Mich. Ct. App. Feb. 28, 2012) (per curiam); *People v. Jenkins*, No. 295456, 2011 WL 476477, at *1–2 (Mich. Ct. App. Feb. 10, 2011) (per curiam); *People v. Jasper*, No. 294496, 2011 WL 222241, at *1, *4 (Mich. Ct. App. Jan. 25, 2011); *People v. Wynn*, No. 287996, 2010 WL 293066, at *1 (Mich. Ct. App. Jan. 26, 2010) (per curiam); *People v. Willis*, No. 294788, 2010 WL 5129666, at *1 (Mich. Ct. App. Dec. 16, 2010) (per curiam). Thus, Michigan courts appear to treat § 750.110's statutory alternatives as means rather than elements.[3]

Michigan's pattern jury instructions do not provide support for the Government's position either.[4] The United States argues that "[t]he instruction has a footnote that allows the [trial] court to substitute the different places broken into—i.e., to change the elements." This is true, but it does not tell the whole story. The text of the model instruction for § 750.110 uses the generic term "building" to refer to all the statutory alternatives. Michigan Model Criminal Jury Instructions § 25.1. The footnote referenced by the Government reads, in full, "[a]lternatively, specify [the] type of building as found in MCL 750.110: structure / boat / ship / shipping container / railroad car / tent / hotel / office / store / shop / warehouse / barn / granary / factory." *Id.* § 25.1 n.1. This language cuts against treating the statutory alternatives as elements. The

---

[3]The Government also points to *People v. Ferguson*, 528 N.W.2d 825, 826 (Mich. Ct. App. 1995), to "lend[] some support to the idea that Michigan law dictates jurors agree upon a theory to convict a defendant of [breaking and entering]." But *Ferguson* is inapposite because it considered the portion of § 750.110 dealing with the defendant's intent to commit a felony or larceny in the place broken into and entered—not the location aspect of the statute. *See Ferguson*, 528 N.W.2d at 826. Moreover, the court in *Ferguson* did not conclude that the state was required to proceed on a single theory as to the felony at issue because each felony would constitute a different element and thus a different crime. Rather, it concluded that unanimity was required because, to be guilty of violating § 750.110, a defendant must have had specific intent to commit some "particular felony." *Id.* Accordingly, the criminal information must identify the particular felony because the charging documents "must be specific enough to allow a defendant to prepare a defense." *Id.* (citing *People v. Westerberg*, 265 N.W. 489, 490 (Mich. 1936)).

[4]The Government argues that the court should look to Michigan's pattern jury instructions for § 750.110 as part of the "peek" into *Shepard* documents authorized by *Mathis* for the limited purpose of resolving whether the alternatively listed items are elements or means. But because Ritchie pleaded guilty to the relevant offenses, the pattern instructions are not part of the record of his conviction. Therefore, the instructions should likely be considered as a potential source of Michigan law before looking to the *Shepard* documents in the case. *See Descamps*, 133 S. Ct. at 2291 & n.5.

instructions do not mandate that the trial court identify the particular place at issue.  In addition, they indicate that § 750.110's list is comprised of "type[s] of building[s]" that qualify under the statute—not separate elements of distinct crimes.  *Id.*  Therefore, the instructions are in line with the understanding of Michigan courts.

Michigan law therefore indicates that § 750.110's list of locations is a list of means, not elements.  Under *Mathis*, this might be sufficient to resolve the matter.  *See* 136 S. Ct. at 2256.

Nonetheless, examining the text of § 750.110 does not lead to a different result.  The United States contends that the statute's text "does not resolve" the elements–means dilemma "because [it] does not associate different penalties with the different places broken into."  To be sure, if the statute provided a different penalty for breaking into, say, a hotel than it did for breaking into a boat, the case would be much easier:  *Apprendi* would dictate that the statutory alternatives be treated as elements.  *See Mathis*, 136 S. Ct. at 2256.  But an alternatively phrased statute that provides "non-exhaustive examples" also tends to indicate that the listed items are means, not elements.  *Howard*, 742 F.3d at 1348; *see also Mathis*, 136 S. Ct. at 2256 (citing *Howard* with approval).  The Michigan statute does just this, criminalizing breaking and entering into "a tent, hotel, office, store, shop, warehouse, barn, granary, factory *or other building*, structure, boat, ship, shipping container, or railroad car."  Mich. Comp. Laws § 750.110 (emphasis added).

Perhaps the statute could be read as providing specific examples of a building while treating buildings, structures, boats, ships, shipping containers, and railroad cars each as separate elements.  Even accepting this reading, however, § 750.110 appears to include "tent[s]" within the definition of "building," and breaking and entering a tent does not constitute a generic burglary.  *See Taylor*, 495 U.S. at 599; *United States v. Dantzler*, 771 F.3d 137, 142 (2d Cir. 2014); *United States v. Cooper*, 302 F.3d 592, 594–95 (6th Cir. 2002).  Under *any* plausible reading, the statute would still be overbroad and indivisible under *Mathis*.

As a result, we need not consider Ritchey's charging documents.  *See Mathis*, 136 S. Ct. at 2256–57.  Even if we did, though, the result would be no different.  The Government correctly points out that the charging documents "each specif[y] the particular building broken into."  This

may be true, but it does not resolve the matter. The factual bases for the convictions are unimportant; the court should only look to the charging documents at this stage for the singular purpose of determining whether the statutory alternatives are elements or means. *Mathis*, 136 S. Ct. at 2256–57. Unless the alternatives are elements, the court cannot consider the charging documents further. *Id.*

Here, the charging documents indeed identify the locations Ritchey broke and entered as a "garage," a "barn," or a "store." On first glance, this may appear to suggest that each location listed in § 750.110 constitutes a separate element. But other portions of the charging documents weigh in favor of treating the items as means. One of the specific places listed in the charging documents—a "garage"—is not identified in the statute at all. Therefore, it is implausible that this language identifies a particular statutory alternative, much less treats it as an element. In addition, each relevant offense is captioned "Breaking & Entering – A Building with Intent." In context, as discussed above, the term "building" is a placeholder that encompasses a broad swath of locations, at least one of which—a tent—is not within the generic definition of burglary. Finally, one of the charging documents indicates that Ritchey "did break and enter [a] BARN/GARAGE." This phrasing strongly undercuts the Government's claim that Michigan prosecutors are unable to "charg[e] places in the alternative" when pursuing violations of § 750.110. The fact that Michigan prosecutors charged Ritchey with breaking and entering a place that was either a barn or a garage tends to indicate that the statutory alternatives are means rather than elements.

At bottom, record materials will resolve the elements–means dilemma only when they "speak plainly" so as to "satisfy '*Taylor*'s demand for certainty'" that the "defendant was convicted of a generic offense." *Mathis*, 136 S. Ct. at 2257 (quoting *Shepard*, 544 U.S. at 21). Because the documents in this case are, at the very most, inconclusive on this score, they cannot form the basis of § 750.100's divisibility.

D.

Only one conclusion is possible under *Mathis*: a conviction under § 750.110 cannot serve as a predicate offense under ACCA. Although the district court did not have the benefit of

*Mathis* at the time of sentencing, this court looks to the law as it currently exists in evaluating plain error. *See Henderson*, 133 S. Ct. at 1130. Therefore, the first two prongs of plain error review have been met: the district court's decision to count Ritchey's breaking and entering convictions as ACCA predicates was clearly in error under *Mathis*.

Under the third prong, the error must have affected Ritchey's "substantial rights." *Church*, 2016 WL 2865736, at *9 (quoting *Ushery*, 785 F.3d at 218). In the sentencing context, this typically occurs when the defendant's term of imprisonment "would have been shorter absent th[e] . . . error." *United States v. Cabrera*, 811 F.3d 801, 812 (6th Cir. 2016); *see also United States v. Olano*, 507 U.S. 725, 734 (1993) (noting that, for a defendant's substantial rights to be affected, he must normally show that the error "affected the outcome of the district court proceedings"). Here, the PSR indicates that, without the ACCA enhancement, Ritchey would likely have had a total offense level of 13 and fallen within Criminal History Category VI, which carries a recommended Guidelines range of 33 to 41 months' imprisonment—well below the 180 months he ultimately received. Because this miscalculation of Ritchey's Guidelines range "almost certainly increased the length of [his] sentence," it also "negatively impacts . . . the integrity of the judicial proceeding," and the fourth prong has been met. *United States v. Batista*, 415 F. App'x 601, 607 (6th Cir. 2011); *see also United States v. McCloud*, 730 F.3d 600, 603 (6th Cir. 2013) ("[A] district court's incorrect calculation of the applicable Guidelines range typically amounts to plain error.").

The Government argues that Ritchey sentence should stand because he agreed that his prior convictions were ACCA predicates in the district court. But, regardless of whether he conceded this point, Ritchey could not have waived or intentionally relinquished an argument based on *Mathis* because the case was decided after his sentencing. *See United States v. McBride*, 826 F.3d 293, 295 (6th Cir. 2016).

\*\*\*

For these reasons, we **VACATE** Ritchey's sentence and **REMAND** the case for resentencing consistent with this decision and *Mathis*.