11-349-cr
United States v. Bogle

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of May, two thousand thirteen.

Present:
> JOHN M. WALKER, JR.,
> ROBERT A. KATZMANN,
> GERARD E. LYNCH,
> > *Circuit Judges*.

------

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                    No. 11-349-cr

GARY BOGLE,

> *Defendant-Appellant*.

------

For Appellee:                    TODD D. KAMINSKY (Jo Ann M. Navickas, Tali Farhadian, *on the brief*), Assistant United States Attorneys, *for* Loretta E. Lynch, United States Attorney for the Eastern District of New York, Brooklyn, NY.

For Defendant-Appellant:    NICHOLAS PINTO, New York, NY.

Appeal from the United States District Court for the Eastern District of New York (Gershon, *J.*).

**ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Gary Bogle appeals from a January 11, 2011 judgment of conviction entered by the United States District Court for the Eastern District of New York (Gershon, *J.*). Following a jury trial, Bogle was convicted of one count of possessing a firearm and ammunition after having been convicted of a felony, in violation of 18 U.S.C. §§ 922(g) & 924(e)(1), and one count of possessing body armor after having been convicted of a violent felony, in violation of 18 U.S.C. §§ 931(a) & 924(a)(7). The district court sentenced Bogle to 262 months of imprisonment. On appeal, Bogle raises several challenges to his conviction, some through counsel and some through his own *pro se* submission. Bogle's counsel argues that: (1) the district court erred in finding that Bogle waived the protection of Fed. R. Evid. 410 when he signed a proffer agreement; (2) the district court erred in concluding that Bogle was subject to a fifteen-year mandatory minimum sentence pursuant to the Armed Career Criminal Act, 18 U.S.C. § 924(e); and (3) the physical evidence recovered from Bogle's car—a live bullet, loaded handgun, and magazine—should have been suppressed because the searches that led to this evidence violated the Fourth Amendment. In his *pro se* brief, Bogle additionally argues that: (4) the body armor he was found wearing should have been suppressed because the officers lacked probable cause to stop his car and arrest him; (5) 18 U.S.C. § 922(g) is unconstitutional;[1] (6) the district court lacked subject matter jurisdiction because the relevant jurisdictional statute, 18

_____

[1] Specifically, Bogle contends that section 922(g) violates the Commerce Clause, the Second Amendment, and the Sixth Amendment. We address Bogle's Commerce Clause and Sixth Amendment arguments in this Summary Order; we address his Second Amendment argument in a separate Opinion filed simultaneously with this Summary Order.

U.S.C. § 3231, was not properly enacted by Congress; (7) the district court erred in not allowing him to present a necessity defense for wearing body armor and possessing a firearm; (8) the indictment should have been dismissed with prejudice after the government violated the Speedy Trial Act; and (9) the district court erred in not allowing Bogle to represent himself at trial along with his counsel. We presume the parties' familiarity with the facts and procedural history of this case, and we now affirm.

We begin with Bogle's claim that he did not voluntarily and knowingly waive his right to the protection of Fed. R. Evid. 410 when he signed a proffer agreement provided by the government. We review a district court's finding that a defendant knowingly and voluntarily waived his rights for clear error, and the district court's conclusion "will be upheld on appeal if any reasonable view of the evidence supports it." *United States v. Lynch*, 92 F.3d 62, 65 (2d Cir. 1996) (internal quotation marks omitted). "A waiver is made knowingly if the defendant has a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it, and it is voluntary if it is the product of a free and deliberate choice rather than intimidation, coercion, or deception." *United States v. Velez*, 354 F.3d 190, 196 (2d Cir. 2004) (internal quotation marks omitted). Bogle argues that his waiver was neither knowing nor voluntary. We disagree.

With respect to whether Bogle knew the consequences of waiving the protection of Rule 410, the record shows that Bogle's previous counsel fully explained to Bogle the nature of the right he was giving up by signing the proffer agreement. Bogle's prior counsel testified before the district court that he explained to Bogle that any statements he made during the proffer session could be used against Bogle if he took the stand. In addition, despite Bogle's contention on appeal that he was never informed of the specific consequences of the proffer agreement other

3

than what would happen if he testified at his trial, Bogle's prior counsel also testified that he explained to Bogle that his proffer statements could be used to rebut any arguments his counsel made at trial that were contrary to statements he made during the proffer session.[2] With respect to whether the waiver was coerced, Bogle offers no arguments beyond the "disparity of bargaining power" between a defendant and the government that we have previously held is insufficient to show that a waiver in a proffer agreement was not voluntary. *See id.* at 195–96. The district court did not err in finding that Bogle knowingly and voluntarily waived his right under Rule 410 not to have his proffer statements used against him.

Turning next to Bogle's sentencing, Bogle contends that the district court erred in concluding that he was subject to the penalties proscribed in 18 U.S.C. § 924(e), "popularly known as the Armed Career Criminal Act . . . , [which] mandates a minimum 15-year prison sentence for anyone possessing a firearm after three prior convictions for serious drug offenses or violent felonies." *Shepard v. United States*, 544 U.S. 13, 15 (2005). A violent felony is defined in the Act as, *inter alia*, "any crime punishable by imprisonment for a term exceeding one year . . . that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). In determining whether a prior crime qualifies as a predicate offense under section 924(e), the Supreme Court has held that the sentencing court must use a "categorical approach" and "look only to the fact of conviction and the statutory definition of the prior offense." *Taylor v. United States*, 495 U.S. 575, 602 (1990); *accord United States v. Brown*, 629 F.3d 290, 294 (2d Cir. 2011) (per curiam). In the context of

---

[2] We pause to note that this blatant misrepresentation of the record on appeal appears in the brief of Bogle's appointed counsel and not in Bogle's *pro se* brief. This is not the level of advocacy we expect from counsel appointed to represent defendants from our Criminal Justice Act panel.

4

a conviction after a guilty plea, the sentencing court is limited to examining the "statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard*, 544 U.S. at 16.

Bogle argues that two of the three New York Certificates of Disposition that the district court relied on to conclude that he was subject to section 924(e) were not sufficient to establish that he had been convicted of three "violent felonies." He relies on our opinion in *United States v. Green*, where we found that the computer system that stored New York Certificates of Disposition did not accurately reflect which subsection a felon was convicted of for certain Certificates issued prior to the 1990s, and that the computer could incorrectly show that a felon was convicted of a predicate felony using a default subsection of "one or '01'" when the felon in fact fell under a different, nonpredicate subsection. *United States v. Green*, 480 F.3d 627, 634–35 (2d Cir. 2007) (remanding for further factfinding where not clear whether defendant actually convicted of possession of a narcotic with "intent to sell").

Here, the two Certificates of Disposition from 1986 that Bogle challenges show that he was previously convicted of attempted robbery and assault, both felonies under New York law. The attempted robbery Certificate states that Bogle was convicted of attempted robbery in the second degree, in violation of N.Y. Penal Law §§ 110 (attempt) & 160.10(01) (robbery). Section 160.10 of the Penal Law provides that a person "is guilty of robbery in the second degree when he *forcibly* steals property . . . ," regardless of the specific subsection applicable. *Id.* § 160.10 (emphasis added). Accordingly, unlike in *Green*, whether Bogle's conviction was in fact for violating subsection 01 or for a different subsection is irrelevant to whether he committed a felony that "has as an element, the use, attempted use, or threatened use of physical force against

5

the person of another." 18 U.S.C. § 924(e)(2)(B)(i). The district court did not err in concluding that Bogle's attempted robbery conviction constituted a violent felony.[3]

Bogle's second 1986 Certificate of Disposition reflects that he was convicted of assault in the second degree, in violation of N.Y. Penal Law § 120.05(2). Because this Certificate states that Bogle was convicted of subsection 2, not the default "one or '01'" at issue in *Green*, *Green* is unavailing. In addition to these two convictions, the district court found that Bogle was again convicted of assault in the second degree in 1996 (after the correction of the computer glitch noted in *Green*), this time in violation of N.Y. Penal Law § 120.05(1). Bogle does not dispute that this 1996 assault conviction constitutes a violent felony. Accordingly, because Bogle has been previously convicted of three "violent felonies" as defined by 18 U.S.C. § 924(e)(2)(B), we find that the district court did not err in applying the penalties proscribed by the Armed Career Criminal Act to Bogle's sentence.

Next, both Bogle and his counsel argue that the physical evidence the police recovered from his person and his car—body armor, a live round of ammunition, a loaded handgun, and an extra magazine—should have been suppressed as obtained in violation of the Fourth Amendment. They contend that the police lacked probable cause to stop his vehicle or to arrest him, that the warrantless search of his car at the scene of the arrest was unconstitutional, and that the subsequent searches of his car at the station house in Brooklyn and trap specialist's office in Manhattan were not proper inventory searches. Reviewing the district court's findings of fact

---

[3] Bogle cites our opinion in *United States v. Rosa* to argue that a conviction for robbery does not necessarily involve violence or the threat of violence. *United States v. Rosa*, 507 F.3d 142 (2d Cir. 2007). This argument misapprehends the issue in *Rosa*. In that case, we addressed only whether a BB gun sufficed as a qualifying "firearm" for a *juvenile* offense under the other clause of section 924(e)(2)(B), and did not address whether the conviction necessarily involved physical force or the threat of physical force under section 924(e)(2)(B)(i). *Id.* at 150. *Rosa* is therefore inapposite.

6

for clear error and legal determinations *de novo*, we conclude that the challenged evidence was either obtained lawfully or was admissible pursuant to the inevitable discovery doctrine. The district court correctly denied Bogle's motion to suppress.

First, the officers had probable cause to stop Bogle's Jaguar and arrest him for violating the New York Vehicle and Traffic Law. *See Whren v. United States*, 517 U.S. 806, 810 (1996) (police may stop a vehicle "where [they] have probable cause to believe that a traffic violation has occurred"); *United States v. Scopo*, 19 F.3d 777, 781 (2d Cir. 1994) (New York law allows an officer to arrest a person who violates the Vehicle and Traffic Law in the officer's presence) (citing N.Y. Crim. Proc. Law § 140.10). The district court did not err in accepting Officer Melamed's testimony that he observed Bogle drive at an unsafe speed on the wrong side of the street, drive through a red light, and attempt to avoid arrest once Melamed turned on his lights and siren. Second, the officer's warrantless search of Bogle's person that led to the seizure of the body armor he was wearing was constitutional as a search incident to a lawful arrest. *See United States v. Robinson*, 414 U.S. 218, 235–36 (1973). Although we are skeptical that the subsequent search of Bogle's Jaguar at the scene of the arrest can also be justified as a search incident to arrest, *see Arizona v. Gant*, 556 U.S. 332, 351 (2009) (holding "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search"), we need not reach the issue here. The officers properly impounded Bogle's car, *see South Dakota v. Opperman*, 428 U.S. 364, 368–69 (1976), then performed a routine inventory search, during which the round recovered from the floor of the passenger seat during the challenged search would inevitably have been discovered,

7

*see United States v. Mendez*, 315 F.3d 132, 137–38 (2d Cir. 2002).[4]

Third, the record is not sufficiently developed as to whether the searches that were conducted by the officers and by a trap specialist in Manhattan subsequent to the initial inventory search, which led to the discovery of the trap in Bogle's car containing the handgun and magazine, were lawful inventory searches conducted according to "standardized criteria." *Colorado v. Bertine*, 479 U.S. 367, 374 & n.6 (1987). Nevertheless, the handgun and magazine are also admissible under the inevitable discovery doctrine. Considering the circumstances leading to Bogle's arrest, as well as the inevitable discovery of the bullet by the passenger seat of his Jaguar, the officers would have had probable cause to suspect that Bogle's car contained evidence of a crime. Because a magistrate judge would have almost certainly issued a warrant to search Bogle's impounded vehicle, the inevitable discovery exception applies and the evidence was therefore admissible. *See United States v. Heath*, 455 F.3d 52, 59–60 (2d Cir. 2006) (inevitable discovery doctrine can be invoked for evidence recovered in a warrantless search if court has a "high level of confidence" that a warrant would have issued and the specific evidence would have been obtained by lawful means). In sum, Bogle's arguments for suppression all fail.

---

[4] In light of the Supreme Court's opinion in *Gant*, the district court granted Bogle's unopposed request for reconsideration of the court's prior denial of his suppression motion. After conducting a second evidentiary hearing, the district court upheld its decision to deny Bogle's motion to suppress, but did not address its original search incident to arrest finding that was arguably called into question by *Gant*. Instead, the court, citing *Gant*, concluded that the search was justifiable as a "safety sweep" of the vehicle that was conducted to protect the officer who would drive the defendant's car to the police precinct for impounding. There is no support for such a holding in *Gant*, nor in any other precedent, of the Supreme Court or otherwise, of which we are aware. As the Supreme Court explained in *Gant*, the protective "safety sweep" exception is an extension of *Terry v. Ohio*, 392 U.S. 1, 21 (1968), that allows an officer to conduct a warrantless search of a vehicle only if an "individual, whether or not the arrestee, is dangerous and might access the vehicle to gain *immediate* control of weapons." *Gant*, 556 U.S. at 346–47 (emphasis added) (internal quotation marks omitted); *see also Michigan v. Long*, 463 U.S. 1032 (1983).

Moving to jurisdiction, Bogle argues that Public Law Number 80-722, by which Congress adopted 18 U.S.C. § 3231 granting district courts original jurisdiction over federal crimes, was not properly enacted into law, and that the district court therefore did not have jurisdiction over his case. Bogle alleges that Congress adjourned *sine die* between the House and Senate votes on the bill, and that since a *sine die* adjournment terminates all pending legislation, the bill should have been reintroduced and voted on again by the House post-adjournment. But Bogle's procedural challenge to the bill's enactment is precluded by the *Marshall Field* doctrine, which states that once an enrolled bill has been signed by the Speaker of the House of Representatives and the President of the Senate in open session and approved by the President of the United States, "its authentication as a bill that has passed congress should be deemed complete and unimpeachable." *Marshall Field & Co. v. Clark*, 143 U.S. 649, 672 (1892). Indeed, we have previously held that *Marshall Field*'s "enrolled-bill rule" precludes challenges to this very bill based on alleged procedural irregularities in its enactment. *See United States v. Farmer*, 583 F.3d 131, 152 (2d Cir. 2009) ("We agree with the government that the enrolled-bill rule precludes Farmer's challenge to the validity [Public Law Number 80-772], and we hold that the district court properly exercised its jurisdiction pursuant to 18 U.S.C. § 3231."). Bogle's argument is therefore unavailing.

Although we address Bogle's Second Amendment challenge to section 922(g) in the Opinion filed alongside this Summary Order, Bogle also argues that section 922(g) is not authorized by the Commerce Clause. We rejected this argument in *United States v. Santiago*, 238 F.3d 213, 216 (2d Cir. 2001), citing section 922(g)'s "express jurisdictional element requiring the government to provide evidence . . . of a sufficient nexus between the charged offense and interstate or foreign commerce." In addition, Bogle contends that the prior felony

9

element of section 922(g) is unconstitutional because it unfairly prejudices the jury against him, denying him the right to a fair trial under the Sixth Amendment. But the Supreme Court has held that such potential prejudice is avoided when the defendant is given the opportunity to admit or stipulate to the prior conviction. *Old Chief v. United States*, 519 U.S. 172, 185, 192 (1997). Here, Bogle stipulated to his prior conviction at trial. He cannot complain of prejudice.

Additionally, Bogle argues that he was entitled to present to the jury an affirmative defense of necessity to justify his possession of a firearm and body armor. Starting with the firearm charge, we will assume without deciding that a defendant can assert a necessity defense to a section 922(g) charge. *See United States v. White*, 552 F.3d 240, 246 (2d Cir. 2009). Under this theoretically available necessity defense, Bogle must establish that "he did not maintain possession of the weapon at issue any longer than absolutely necessary," and we construe any such defense "very narrowly." *Id.* at 247. Bogle contends only that he kept a loaded firearm in a hidden trap in his car because he and his family had been threatened at home weeks prior. This threat does not constitute the "cognizable . . . imminent[] risk to human life," nor can Bogle show that he kept a gun "only for as long as necessary." *Id.* at 247–48 (holding no necessity defense available to defendant who asserted that he took possession of loaded shotgun only to unload it so that the child in the house did not hurt himself because he continued to possess the gun by the time the police arrived in response to a domestic disturbance call). Similarly, turning to the body armor charge, assuming such a necessity defense exists, Bogle does not show there existed an imminent threat that would justify his possession of body armor such that he can invoke the common law defense of necessity. *Cf. United States v. Patton*, 451 F.3d 615, 638 (10th Cir. 2006) (rejecting argument for "modified" necessity defense to a body armor charge that would have relaxed the immediacy requirement to the common law defense of necessity).

Next, Bogle argues that the district court erred in refusing to dismiss the original indictment with prejudice due to the government's failure to comply with the Speedy Trial Act. After arresting Bogle on a felony complaint, the government allowed more than thirty days to elapse before it obtained an indictment from the grand jury. The Speedy Trial Act provides that if a defendant is not indicted within thirty days of being arrested on a complaint, "such charge against that individual contained in such complaint shall be dismissed or otherwise dropped." 18 U.S.C. § 3162(a)(1). "In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." *Id.* § 3162(a)(2). In addition to these statutory factors, the Supreme Court has directed the court to also consider prejudice to the defendant. *United States v. Taylor*, 487 U.S. 326, 334 (1988). "Congress did not intend any particular type of dismissal to serve as the presumptive remedy for a Speedy Trial Act violation." *Id.*

Here, the district court squarely addressed all of the factors set forth at section 3162, as supplemented by Supreme Court precedent. The court concluded that because the seriousness of the offense alleged against Bogle was high, because the delay was due to the government's good-faith negotiations with defense counsel over a potential cooperation agreement, and because reprosecution would serve the interests of justice and not unfairly prejudice the defendant, the appropriate remedy was to dismiss the indictment without prejudice and allow the prosecution to refile. We see no error in the district court's adjudication of the Speedy Trial Act violation. *See id.* at 342 ("Dismissal without prejudice is not a toothless sanction: it forces the Government to obtain a new indictment if it decides to reprosecute, and it exposes the prosecution to dismissal on statute of limitations grounds.").

11

Finally, Bogle argues that the district court deprived him of his Sixth Amendment right to self-representation by refusing to allow him to serve as "co-counsel" with his attorney. This is not a proper Sixth Amendment claim. Although the Sixth Amendment provides the right for a defendant to represent himself *pro se*, *Faretta v. California*, 422 U.S. 806, 821 (1975), we have explained that because a defendant must affirmatively waive the right to counsel before exercising the right to self-representation, there is no constitutional or statutory right to "hybrid representation," *United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989). The "decision to grant or deny 'hybrid representation' lies solely within the discretion of the trial court." *Id.* Bogle offers no compelling reason to justify his appearance as co-counsel. To the contrary, Bogle's own counsel objected to his request. His claim is meritless.

We have considered all of the defendant's remaining arguments and find them to be without merit. Accordingly, for the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK
