RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0059p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MOISES PEREZ,

        *Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

        *Respondent-Appellee.*

No. 17-3419

---

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
Nos. 1:14-cr-00312; 1:16-cv-02434—Patricia A. Gaughan, District Judge.

Argued: March 15, 2018

Decided and Filed: March 26, 2018

Before: MERRITT, SUTTON, Circuit Judges, and CLELAND, District Judge.[*]

---

## COUNSEL

**ARGUED:** Claire C. Curtis, FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant. Brian M. McDonough, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee. **ON BRIEF:** Claire C. Curtis, FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant. Brian M. McDonough, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

      SUTTON, J., delivered the opinion of the court in which CLELAND, D.J., joined. MERRITT, J. (pg. 11), delivered a separate dissenting opinion.

---

      [*]The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

---

**OPINION**

---

SUTTON, Circuit Judge.  Moises Perez pleaded guilty to being a felon in possession of a firearm.  The court deemed Perez an armed career criminal and sentenced him to 210 months.  Our court affirmed the sentence.  Perez filed this § 2255 motion, claiming his prior conviction for New York second degree robbery should not have qualified as a predicate violent felony under the Armed Career Criminal Act.  The district court denied relief.  Because the state robbery offense requires the defendant to "use[] or threaten[] the immediate use of physical force upon another person," N.Y. Penal Law §§ 160.00, 160.10, and because that offense includes "as an element the use, attempted use, or threatened use of physical force against the person of another" under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(i), we affirm.

I.

On January 27, 2015, Moises Perez pleaded guilty to being a felon in possession of firearms and ammunition.  *See* 18 U.S.C. § 922(g)(1).  The Armed Career Criminal Act imposes a mandatory minimum sentence for defendants convicted of violating § 922(g) who have three prior convictions for violent felonies or serious drug offenses.  *Id.* § 924(e)(1).  The presentence report identified five predicate offenses:  (1) a 1987 New York conviction for second degree robbery, (2) a 2003 Ohio conviction for attempted intimidation, (3) a 2003 Ohio conviction for attempted felonious assault, (4) a 2011 Ohio conviction for burglary, and (5) a 2011 Ohio conviction for attempted felonious assault.  The district court agreed that the five prior convictions qualified and sentenced Perez to 210 months.  We affirmed.  *United States v. Perez,* 667 F. App'x 543 (6th Cir. 2016) (per curiam).

Perez seeks post-conviction relief on the ground that the district court imposed a sentence "in violation of the Constitution or laws of the United States."  28 U.S.C. § 2255.  He claims that three of his predicate offenses (Ohio attempted intimidation, Ohio burglary, and New York second degree robbery) do not qualify because they turned on the residual clause of ACCA, which the Supreme Court invalidated on vagueness grounds.  *Johnson v. United States*, 135 S.

Ct. 2551 (2015). The government concedes that the two Ohio convictions no longer qualify but maintains that the New York robbery conviction remains a violent felony under ACCA's elements clause. The district court agreed, concluding that the New York robbery conviction amounted to a crime of violence. Perez appealed.

## II.

Any "violent felony" trek requires some preparation for the climb.

What part of the Armed Career Criminal Act applies? If a defendant has "three previous convictions . . . for a violent felony or a serious drug offense," ACCA imposes a mandatory minimum 15-year sentence. 18 U.S.C. § 924(e)(1). A felony qualifies as "violent," among other ways, if it "has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* § 924(e)(2)(B)(i). Check.

How do we determine whether the elements of a crime satisfy the violence requirement? To figure out whether a crime meets the elements clause, we look to the statutory definition of the state offense rather than the underlying facts of the conviction, what has come to be known as the categorical approach. *Taylor v. United States*, 495 U.S. 575, 600 (1990). That means we care only whether each predicate crime requires the government to prove that the defendant used, attempted to use, or threatened to use physical force against another—not what actually happened on that day. If a State convicts a person of criminal trespass, it would not matter whether he dug a hole or punched a security guard to commit the offense. Because our touchstone is whether the crime *requires* physical force, not whether the criminal conduct *involves* physical force, our test case becomes the least forceful conduct generally criminalized under the statute. The predicate conviction qualifies if that conduct involves violent physical force. Check.

Relevant state law to put under this microscope?  Here is the language of New York's second degree robbery statute:

**160.10 Robbery in the second degree**

A person is guilty of robbery in the second degree when he forcibly steals property and when:

1.  He is aided by another person actually present; or
2.  In the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime:
    (a)  Causes physical injury to any person who is not a participant in the crime; or
    (b)  Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; or
3.  The property consists of a motor vehicle, as defined in section one hundred twenty-five of the vehicle and traffic law.

N.Y. Penal Law § 160.10.  Check.

Divisible or indivisible law?  The statute identifies four possible crimes: (1) robbery aided by another person, (2)(a) robbery causing physical injury, (2)(b) robbery with a firearm, or (3) robbery of a car.  Because these options describe different crimes with different elements, the statute is divisible. *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016).  Check.

Application of the modified categorical approach with a divisible law?  When a statute identifies separate crimes with separate elements, we may look at the record of the prior conviction, including the indictment, jury instructions, plea agreement, and colloquy, to determine what crime the defendant committed.  *Shepard v. United States*, 544 U.S. 13, 26 (2005).  The indictment confirms that Perez committed New York second degree robbery aided by another person (§ 160.10(1)).  Check.

With this information in hand, we can proceed to the track and the question in front of us: Does this form of New York second degree robbery—defined as "forcibly steal[ing] property" while "aided by another person actually present," N.Y. Penal Law § 160.10(1)—have "as an element the use, attempted use, or threatened use of physical force against the person of another," 18 U.S.C. § 924(e)(2)(B)(i)?  Yes.

*Text.* The parties agree that Perez's petition turns on what it means to "forcibly steal property" under New York law, an element common to New York robbery of all degrees. (The aggravating factor of being aided by another person does not impose an independent physical force requirement. Help can take a number of different forms, some forceful and some not.) Here is how the New York legislature defines "forcibly stealing property":

> **160.00 Robbery; defined.**
> Robbery is forcible stealing. A person forcibly steals property and commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of:
> 1. Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or
> 2. Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny.

N.Y. Penal Law § 160.00.

As a matter of statutory text, the elements requirement of ACCA and the elements of the New York offense line up perfectly. Section 160.10 criminalizes "forcibly steal[ing] property," which involves "us[ing] or threaten[ing] the immediate use of physical force upon another person." And ACCA treats a state crime as a predicate violent felony if it "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). Put another way: A ("forcibly steal[ing] property" under § 160.10) = B (using "physical force" under § 160.00) = C (using "physical force" under ACCA).

*Judicial interpretations of "physical force."* In construing "physical force" under ACCA, the Supreme Court has explained that it requires not just an "unwanted touching" but "*violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140, 142 (2010). The New York courts by and large have construed the statute to go beyond a mere touching and to include force that would cause pain to another. A recent decision from the New York Court of Appeals says that robbery requires a threshold level of force and cannot be "a taking 'by sudden or stealthy seizure or snatching'" that is "akin to pickpocketing, or the crime of jostling." *People v. Jurgins*, 46 N.E.3d 1048, 1053 (N.Y. 2015).

New York law also gives common-law terms of art their common-law meaning unless context suggests otherwise. *People v. King*, 463 N.E.2d 601, 603 (N.Y. 1984). "Physical force" is used to define robbery, which has long been understood to require violent force or intimidation of violent force. 4 William Blackstone, Commentaries *241 (St. George Tucker ed. 1803) ("Open and *violent* larceny from the person, or robbery, . . . is the felonious and forcible taking, from the person of another, of goods or money to any value *by violence or putting him in fear*."); 1 W. Blake Odgers & Walter Blake Odgers, The Common Law of England 331 (2d ed. 1920) ("Robbery is the unlawful taking possession of the goods of another *by means of violence or threats of violence*, used with the object of obtaining those goods from the owner . . . . "); 3 Wayne R. LaFave, Substantive Criminal Law § 20.3(d) (3d ed. & 2017 Update) ("Robbery requires that the taking be done *by means of violence or intimidation*.") (emphases added). This common law background provides a good reason to believe the "physical force" in the New York robbery statute means the same kind of physical force that ACCA requires.

Several New York intermediate court decisions have embraced this interpretation. In one, the court noted that the victim "was not intimidated, knocked down, struck, or injured, which would [have] elevate[d] the purse snatching to a robbery." *People v. Middleton*, 212 A.D.2d 809, 810 (N.Y. App. 2d Dep't 1995). In another, the victim was not "threatened, pushed, shoved or injured" during the incident, which precluded the crime from being robbery. *People v. Dobbs*, 24 A.D.3d 1043, 1044 (N.Y. App. 3d Dep't 2005). In still another, the victim fell but "did not feel anything on her body" and thus the "fall could have been due to a cause other than a push" and thus the crime did not have the requisite physical force for robbery. *People v. Chessman*, 75 A.D.2d 187, 190 (N.Y. App. 2d Dep't 1980). And in a final one, there was "no evidence that the victim was injured or was in danger of injury," which again precluded the crime from rising to the level of robbery. *People v. Davis*, 71 A.D.2d 607, 607 (N.Y. App. 2d Dep't 1979).

Several cases from the Second Circuit (which covers New York) have looked at the matter in just this way. Each of the following cases treated New York robbery as a predicate conviction under ACCA's elements clause or the identically-worded Sentencing Guideline, § 4B1.2(a)(1). *See United States v. Kornegay*, 641 F. App'x 79, 85 (2d Cir. 2016); *United States*

*v. Bogle*, 522 F. App'x 15, 19 (2d Cir. 2013); *Gonzalez v. United States*, 433 F. App'x 24, 27 (2d Cir. 2011); *United States v. Brown*, 52 F.3d 415, 426 (2d Cir. 1995). All of these sources considered, the district court properly treated this conviction as an ACCA predicate.

But this is a false peak, Perez warns, noting that *United States v. Yates* held that Ohio robbery was not a crime of violence under the Guidelines. 866 F.3d 723 (6th Cir. 2017). But that decision turned on Ohio's broad definition of force as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." Ohio Rev. Code § 2901.01(A)(1). The New York statute contains no such definition, and thus a New York conviction may not result from "any . . . constraint physically exerted by any means . . . against a person." As in *Yates*, this case turns on the language of the state law: The New York definition satisfies *Johnson*, while the Ohio definition does not.

Other New York intermediate court decisions, Perez separately points out, suggest that second degree robbery can be committed without "force capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 140. In *People v. Bennett*, the defendant and three others "formed a human wall that blocked the victim's path as the victim attempted to pursue" a pickpocket. 219 A.D.2d 570, 570 (N.Y. App. 1st Dep't 1995). In *People v. Lee*, the defendant "bumped his unidentified victim, took money, and fled while another forcibly blocked the victim's pursuit." 197 A.D.2d 378, 378 (N.Y. App. Div. 1st Dep't 1993). In *People v. Spencer*, the defendant stood "'chest to chest' with the victim, moving in unison with the victim until the latter was backed up against a subway pole." 255 A.D.2d 167, 168 (N.Y. App. Div. 1st Dep't 1988). And in *People v. Safon*, a store clerk "grabbed the hand in which [the] defendant was holding the money and the two tugged at each other until [the] defendant's hand slipped out of the glove holding the money." 166 A.D.2d 892, 893 (N.Y. App. 4th Dep't 1990).

Based on these cases, the Second Circuit in one instance opted not to treat second degree robbery as a crime of violence under the Sentencing Guidelines, *United States v. Jones*, No. 15-1518-cr, 2016 U.S. App. LEXIS 13296 (2d Cir. July 21, 2016), though the decision was later vacated on other grounds, 838 F.3d 296 (2d Cir. 2016) (mem.). And the First Circuit recently adopted a similar approach. *United States v. Steed*, 879 F.3d 440, 448–51 (1st Cir. 2018).

Recall, however, that ACCA's elements clause covers state crimes that involve the actual "use of physical force" *and* the "threatened use of physical force." Even the New York cases that do not seem to have the requisite use of physical force may have the requisite threatened use of physical force. To take an example from one of the cases, a human wall may be unforceful by its nature. But it may well turn violent if the victim attempts to break through it. And although the victims may not have suffered injury in the instant cases, that does not mean they were not confronted with threats "*capable* of causing physical pain or injury," which is all the statute requires. *Johnson*, 559 U.S. at 140 (emphasis added). Neither *Jones* nor *Steed* seems to account for this consideration.

The other point is that our "focus on the minimum conduct criminalized by the state statute is not an invitation to apply 'legal imagination' to the state offense." *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013). There must be a "realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Gonzales v. Duenas-Alvarez*, 549 U.S. 184, 193 (2007). If we "indulge in imaginative flights" about different ways a law could be broken without physical force (or different ways to read a two-sentence lower-court opinion about a state law)—even, as here, when the law by its terms requires "the immediate use of physical force"—we run the risk of transforming many countable violent offenses into non-countable offenses. *See United States v. Doctor*, 842 F.3d 306, 313 (4th Cir. 2016) (Wilkinson, J., concurring). Fair interpretation requires us to presume "that the legislature was made up of reasonable persons pursuing reasonable purposes reasonably." Henry M. Hart, Jr. & Albert M. Sacks, The Legal Process 1378 (1958). To excuse thousands of violent career criminals from ACCA's consequences on account of a few (potentially) outlier lower court decisions, or gossamer-thin distinctions between the definitions of two offenses, is not to "apply the rule to particular cases," but to erase it. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803).

What of the rule of lenity, Perez might argue? Shouldn't we use it to resolve ambiguities in criminal statutes (including sentencing statutes) in favor of the individual? *Bifulco v. United States*, 447 U.S. 381, 387 (1980) (applying rule of lenity to a sentencing statute). There is something to be said for the point. Under the categorical approach, as this case shows, we map a

hypothetical test case under an oft-evolving state law onto a federal law that itself can change from time to time. The approach creates serial opportunities for uncertainty. It is no exaggeration to say that interpretive complications in this area, like a flu virus, can spread exponentially. Plus, a principal rationale for lenity is notice—that "a fair warning should be given to the world in language that the common world will understand." *McBoyle v. United States*, 283 U.S. 25, 27 (1931). Yet when the federal courts of appeals find themselves twisted in knots trying to figure out whether a crime is divisible into parts, involves physical force capable of causing injury, or sweeps more broadly than a common law analog, it is easy to wonder whether an ordinary person knows what law applies to him.

But this is not a good case for applying the rule of lenity, which may explain why Perez did not argue it in his appellate briefs. There is one salient feature of this case that provides plenty of notice of the best kind: the text of the New York law. And that law lines up exactly with ACCA. It is fair to presume that a crime requiring a defendant to "use[] or threaten[] the immediate use of physical force upon another person," N.Y. Penal Law § 160.00, "has as an element the use, attempted use, or threatened use of physical force against the person of another," 18 U.S.C. § 924(e)(2)(B)(i). Courts need a good reason to deviate from such clear textual clues, and Perez has not met that burden.

One other thing. The lower court New York cases on which Perez relies are brief orders, devoid of anything more than a few sentences of reasoning, and susceptible to multiple interpretations. *Bennett*, 219 A.D.2d at 570; *Lee*, 197 A.D.2d at 378; *Spencer*, 255 A.D.2d at 168; *Safon*, 166 A.D.2d at 893. Because our task is to determine what conduct can realistically (not merely possibly) be punished under the statute, there is no reason to give these cases any more weight than the New York lower court cases going the other way and certainly not more weight than the text of the law or the pertinent New York Court of Appeals decision.

Before concluding, a word of caution is in order. By focusing on the elements of state crimes and not the circumstances of particular convictions, the categorical approach endorses a generalized inquiry. That method limits the scope of the sentencing court's analysis, reduces decision costs, and promotes consistency between individual defendants. While that approach requires federal courts to examine state precedents to determine the scope of the state law at

issue, that inquiry must be a sensible one—lest the benefits of the categorical approach evaporate. If we hyper-scrutinize the factual details of every prior conviction and hypothesize generalizations based on a few-sentence analysis in such cases, that takes us far afield from the categorical approach's mandate—and creates an unfortunate irony to boot. How odd to dissect the precise contours of all New York robbery convictions but one: the conviction of today's criminal defendant. We should pause before adopting a mindset that reintroduces—and multiplies—some of the very ills the categorical approach was meant to cure. Else, the occasional risks of the modest slope (reviewing state cases to understand the meaning of a state criminal law) will surpass the perils of the steep slope (reviewing the facts of each defendant's relevant state court convictions).

For these reasons, we affirm.

---

**DISSENT**

---

MERRITT, Circuit Judge, dissenting.  There are many cases under New York's second degree robbery statute. Some of them find a violation but do not require any violent physical force.  Take the case of *People v. Bennett*, 631 N.Y.S.2d 834 (N.Y. App. Div. 1995), in which the defendant was part of a human wall holding hands in order to block the victim's path as he attempted to pursue a pickpocket.  No violence or threat.  The New York court applied the statute.  As a result, as my colleagues seem to admit, the First and Second Circuits do not consider the New York statute to necessarily require the use or threatened use of violent physical force.  The application of the statute is uncertain, to say the least.  On the question of force, the statute has been interpreted all over the place.  The various umpires have different "strike zones." As applied, the meaning of the statute is ambiguous.

I would, therefore, apply the Rule of Lenity.  When applying the Rule of Lenity in this situation, I would think that my colleagues would not apply the Armed Career Criminal Act to impose the longest possible mandatory minimum sentence.  We have the choice of not applying the harsher sentence under the Rule of Lenity.  But no.  Given the choice of a harsher or milder sentence by this unstable maze of cases, the Court chooses the harsher sentence.  Why?  I don't know.  I leave it to the reader to speculate.